## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Embreeville Redevelopment, L.P.,   :
                  Appellant   :
                            :
           v.              :
                            :
The Board of Supervisors of   :   No. 1381 C.D. 2015
West Bradford Township     :   Argued: February 8, 2016


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge

OPINION BY
JUDGE COVEY                FILED: March 2, 2016


Embreeville Redevelopment, L.P. (Embreeville) appeals to this Court from the Chester County Common Pleas Court's (trial court) June 30, 2015 order dismissing its appeal and affirming West Bradford Township's (Township) Zoning Ordinance 2013-6 (Ordinance) as valid. The sole issue for this Court's review is whether the Township's Board of Supervisors (Board) erred by finding that the Ordinance, which amended the Township's Code of Ordinances (Code), constituted a curative text amendment rather than a zoning map change.[1] After review, we reverse.

In May 2013, a group of investors who would later form Embreeville, purchased 223 acres of land (206 acres of which is located in the Township)[2] for

---

[1] Embreeville presented the following specific issues: (1) whether the trial court erred by finding the Ordinance valid despite that it was a zoning map change that required the Board to follow certain notice requirements; and (2) whether the Board violated the notice requirements set forth in Section 609 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10609. We restated the issues because if we conclude the trial court erred, we need not address the second issue since the Township acknowledged that it did not give the required notice for a zoning map change. Thus, the sole issue is whether the Ordinance was a curative text amendment or a zoning map change.

[2] The remaining acreage is located in adjacent Newlin Township.

redevelopment, primarily for residential use as "Embreeville Center" (Property).  The Property was zoned IM-Industrial/Mixed Use, and was historically used as a Commonwealth psychiatric hospital.  Because Embreeville's proposed redevelopment was not permitted as of right or by conditional use, before and after acquiring the Property, Embreeville met with the Township regarding its redevelopment plans.  In April 2013, Embreeville presented its land use plan to the Board at a public work session.  It submitted additional plan updates and revisions thereafter.

In June 2013, the Township commissioned the Brandywine Conservancy, Inc. (Conservancy) to determine if the Code was meeting the Township's fair share housing obligations.  On August 8, 2013, the Conservancy reported that the Township faced a projected deficit of more than 1,000 multi-family housing units between 2013 and 2040.

On August 13, 2013, the Board declared at a public meeting that the Code was substantively invalid, in relevant part, because it failed to provide adequate land area within the Township for the development of multi-family dwellings, including townhomes, semi-detached homes and apartments.  *See* Reproduced Record (R.R.) at 9a-13a.  On September 10, 2013, the Board passed Resolution No. 13-12, invoking a municipal cure period for the Code's invalid portions (*i.e.*, 180 days from August 13, 2013), pursuant to Section 609.2 of the Pennsylvania Municipalities Planning Code (MPC).[3]  *See* R.R. at 14a-18a, 132a-134a.

On October 22, 2013, the Board conducted a public meeting at which Conservancy professional land planners John Theilacker (Theilacker) and Tony Robalik (Robalik) presented the Ordinance as a curative amendment to the Township's Code and comprehensive plan.  *See* R.R. at 24a-27a, 60a-71a.  In

---

[3] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 2 of the Act of October 5, 1978, P.L. 1067, 53 P.S. § 10609.2.

relevant part, the Ordinance would add medium and high-density residential uses to the Township's I-Industrial District. *See* R.R. at 139a-150a.

On October 23, 2013, Township Manager Tommy Ryan (Ryan) sent the Ordinance to the Township's Planning Commission (Planning Commission) and the Chester County Planning Commission (CCPC) for review and comment. Ryan also sent copies of the Ordinance to the Downingtown Area School District and adjacent municipalities. *See* R.R. at 56a-59a. On October 30, 2013, Ryan posted the Ordinance on the Township's website as well as notice of a public hearing that would be held on December 10, 2013 to consider adoption of the Ordinance.

By November 5, 2011 memorandum to the Board, Embreeville asked the Township not to adopt the Ordinance, "but rather develop an ordinance amendment that would allow the bulk of its medium and high[-]density development to occur on the . . . Township portion of the Embreeville [Center], which is available, in need of redevelopment, and more appropriate for such residential housing" than in the Township's I-Industrial District. R.R. at 76a. By November 6, 2013 letter, Embreeville's counsel presented to the Board an updated plan for the Property, a planning statement and a proposed draft ordinance that would allow for the clean-up and redevelopment of the site. *See* R.R. at 93a-108a.

On November 13, 2013, Ryan sent copies of the Ordinance to the *Daily Local News* and the Chester County Law Library for public inspection. *See* R.R. at 78a. On November 14, 2013, at a public meeting with the Township's Planning Commission, Ryan discussed the Ordinance and, on November 16, 2013, the Planning Commission visited the I-Industrial District to assess the suitability for high-density residential housing options. On November 19, 2013, the Planning Commission held a public meeting at which the Ordinance was discussed, and Planning Commission Vice-Chairman Mark Slouf represented that the Planning

3

Commission had found the properties in the I-Industrial District suitable for medium and high-density residential uses.

The Township published notice in the *Daily Local News* on November 18 and 25, 2013 that the Ordinance would be considered and possibly adopted at a public meeting on December 10, 2013. *See* R.R. at 84a, 135a, 137a. The affected properties were not posted, and no notices were sent to the property owners.

On December 3, 2013, the Planning Commission held another public meeting to consider the Ordinance. The Planning Commission reviewed the CCPC's November 19, 2013 comments and conclusion that the medium to high-density residential development would be an appropriate use in the I-Industrial area.[4] The Planning Commission also acknowledged comments from Embreeville's land planner Glackin, Thomas and Panzak and, thereafter, voted unanimously to recommend that the Board adopt the Ordinance. At the December 10, 2013 public meeting, after considering comments from the public, the Conservancy, the Planning Commission, the Township's solicitor, and Embreeville's counsel and land planner, the Board unanimously voted to adopt the Ordinance.

Embreeville appealed to the trial court, claiming that the Ordinance was procedurally invalid because the Board violated the notice requirements for a zoning map change as required by Section 609(b) of the MPC. The Board responded that it was not required to, and did not, adhere to the notice requirements in Section 609(b) of the MPC because, rather than a zoning map change, the Ordinance was a curative text amendment covered by and passed in accordance with Section 609.2 of the MPC. *See* R.R. at 158a. The Board further asserted that the Ordinance did not propose or

---

[4] The CCPC recommended that the Township examine its comments before adopting the curative amendment, and consider providing diversified housing opportunities throughout the Township beyond those proposed in the Ordinance.

4

adopt a zoning map change,[5] nor increase or decrease any zoning district size or revise any zoning district boundaries. *See* R.R. at 153a-164a. Without taking additional evidence, on June 30, 2015, the trial court dismissed Embreeville's appeal and upheld the Ordinance. *See* Embreeville Br. Ex. A (Trial Ct. Order). Embreeville appealed to this Court.[6]

Embreeville argues that the Ordinance "effectuated comprehensive change to [the Township's] I-Industrial Zoning District because it effectively created a new residential zoning district within that zoning district" (*i.e.*, a zoning map change) and, because the Township failed to post and mail notice of the public hearing on the Ordinance in accordance with Section 609(b) of the MPC, the Ordinance is invalid. Embreeville Br. at 11. We agree.

Initially, Section 609.2(2) of the MPC provides that once a municipality declares that its ordinance is invalid, and proposes a curative amendment, it has 180 days to "enact a curative amendment . . . pursuant to . . . [S]ection 609 [of the MPC.]" 53 P.S. § 10609.2(2). Section 609(b) of the MPC states, in pertinent part:

> (1) Before voting on the enactment of an amendment, the governing body shall hold a public hearing thereon, **pursuant to public notice** . . . . In addition, **if the proposed amendment involves a zoning map change, notice of said public hearing shall be conspicuously posted** by the municipality at points deemed sufficient by the municipality **along the tract** to notify potentially

---

[5] The Township claimed that the map attached to the Comprehensive Plan Addendum was a "Future Land Use Map" and not a zoning map. R.R. at 157a.

[6] In this land use appeal, where the trial court does not take any additional evidence, the Court's review is limited to determining whether the local governing body committed an error of law or an abuse of discretion. *Herr v. Lancaster C*[*nty.*] *Planning Comm*[*'n*], . . . 625 A.2d 164 ([Pa. Cmwlth.] 1993). The Court has explained that 'the governing body abuses its discretion when its findings of fact are not supported by substantial evidence.' *Id.* . . . at 167.

*Keinath v. Twp. of Edgmont*, 964 A.2d 458, 461-62 n.3 (Pa. Cmwlth. 2009).

interested citizens. The affected tract or area shall be posted at least one week prior to the date of the hearing.

(2) (i) **In addition** to the requirement that notice be posted under clause (1), **where the proposed amendment involves a zoning map change, notice of the public hearing shall be mailed by the municipality** at least 30 days prior to the date of the hearing by first class mail **to the addressees to which real estate tax bills are sent for all real property located within the area being rezoned**, as evidenced by tax records within the possession of the municipality. The notice shall include the location, date and time of the public hearing. A good faith effort and substantial compliance shall satisfy the requirements of this subsection.

53 P.S. § 10609(b) (emphasis added).

Accordingly, if the Ordinance was a curative text amendment, under Section 609 of the MPC, the Township was required only to issue public notice of the Board's December 10, 2013 public hearing.[7] If, on the other hand, the Ordinance represented a zoning map change, in addition to the public notice, the Township had an obligation to conspicuously post notice at the affected properties and mail notices to the properties' taxpayers.[8] Thus, whether the Township fulfilled its notice requirements under Section 609(b) of the MPC turns upon whether the Ordinance was, in effect, a curative text amendment or a zoning map change.

_____

[7] Section 107 of the MPC defines "public notice" as

notice published once each week for two successive weeks in a newspaper of general circulation in the municipality. Such notice shall state the time and place of the hearing and the particular nature of the matter to be considered at the hearing. The first publication shall not be more than 30 days and the second publication shall not be less than seven days from the date of the hearing.

53 P.S. § 10107. Here, the Township met the public notice requirement with its November 18 and 25, 2013 *Daily Local News* publications.

[8] Because the Township deemed the Ordinance a text change rather than a zoning map change, the Township did not post or mail notice of the December 10, 2013 public meeting.

The MPC does not define the terms "curative text amendment" and "zoning map change[.]" The trial court stated: "Since the legislature has not defined a zoning map amendment versus a text or curative amendment, such a determination has been left to the judiciary." Trial Ct. Order n.1 at 2. The issue in the instant case was addressed by this Court in *Takacs v. Indian Lake Borough Zoning Hearing Board*, 11 A.3d 587 (Pa. Cmwlth. 2010), and *Shaw v. Township of Upper St. Clair Zoning Hearing Board*, 71 A.3d 1103 (Pa. Cmwlth. 2013).

In *Takacs*, the borough council appointed a committee to review how its Ordinance No. 99 could be amended so it was less confusing. After the committee's study, public comment and the county planning commission's input, the council adopted amendments (Ordinance No. 144), which added uses to some of the borough's zoning districts, such as adding multi-family structures and commercial boat docking in its commercial-recreational district. Takacs challenged Ordinance No. 144's validity because, among other things, council failed to provide notice of the zoning map change. This Court held that because "the addition of permitted uses to a zoning district does not constitute a zoning map change[,] . . . Ordinance No. 144 is not invalid for failure to give notice of zoning map changes." *Id.* at 593 (footnote omitted).

In *Shaw*, a developer submitted an application to the township for a text amendment to the zoning ordinance that would allow mixed-use development as a conditional use in a special business district (Ordinance No. 2056). Shaw challenged the amendment because, *inter alia*, the township failed to follow the notice requirements for a zoning map change. This Court recognized that although Ordinance No. 2056 on its face appeared to add mixed-use development as a single conditional use in the special business district, in reality, it added at least 20 additional uses with a multitude of accompanying requirements and, thus, "created a comprehensive zoning scheme that, in essence, created a new zoning district within

7

the existing special business district." *Id.* at 1109. Accordingly, this Court held: "[I]f an ordinance contains changes that are so comprehensive in nature as to result in a substantial change to the manner in which the tract of land is zoned in comparison to the surrounding tracts of land that were similarly zoned, then that ordinance will constitute a map change." *Id.*

Here, having examined *Takacs* and *Shaw*, the trial court concluded that since the Ordinance "does not appear to be a 'comprehensive zoning scheme[,]'" it was a curative text amendment rather than a zoning map change and, thus, the Board complied with the notice requirements of Section 609(b) of the MPC. Trial Ct. Order n.1 at 4. The trial court reasoned:

> The Ordinance herein adds by conditional use six (6) mid[-] to high[-]density residential uses only consisting of garden apartments, multi[-]family dwellings, quadraplexes, townhomes, twins and duplexes. Although more than the two added uses in *Takacs*, these additional uses are far less in number and type of use than those permitted in the *Shaw* case. The Ordinance itself consists of six (6) pages, five of which relates not to conditional criteria as found in *Shaw* but rather to new area, bulk and design standards. The additional residential uses can be exercised by all property owners within the [I-Industrial D]istrict, including those that are currently using their properties for industrial purposes, as long as the development tract contains ten (10) acres. This again differs from the *Shaw* case. All property within the [I-]Industrial [D]istrict herein is equally affected and the Board has determined, with the aid of the [] Conservancy, that there are presently at least five (5) parcels of land zoned within the current district that could be developed with higher[-]density residential uses by conditional use approval. Here, unlike in *Shaw*, the Ordinance does not effectively rezone the property within the district but only adds uses . . . to an already[-]existing district and changes no district lines. There would be no change to the Township zoning map boundaries other than a legend change that would indicate additional uses permitted within the existing zoning districts.

8

Trial Ct. Order n.1 at 3. However, a determination of whether a comprehensive zoning scheme exists cannot be based upon the number of proposed changes, but rather the overall effect of the changes. *Shaw*.

Section II of the Ordinance amended Section 450-57 of the Township's Code to revise the purpose of the I-Industrial District to include "a variety of higher-density housing options . . . within close proximity to nearby commercial centers." R.R. at 60a. Section III of the Ordinance added under the conditional uses: "Garden apartments, multiple-family dwellings, quadraplexes, single-family dwelling attached (townhouses), single-family semi[-]detached (twins), and two-family detached (duplexes), when public water and public (or community) sewer are available." R.R. at 60a. Sections IV through X of the Ordinance added to Section 450-57 of the Code lot area, width and coverage requirements (Section IV), minimum setbacks (Section V), building height requirements (Section VI), off-street parking regulations (Section VII), design standards (Section VIII), conditional use standards (Section IX) and screening requirements (Section X) for residential uses in the I-Industrial District. Section XI of the Ordinance amended the Township's Comprehensive Plan as reflected in the Addendum attached as Ordinance Exhibit A.

The Comprehensive Plan Addendum summarized:

Within Chapter 8 of the Township Comprehensive Plan, **a new future land use category is added called 'Medium to High[-]Density Residential'**, and the 2009 Future Land Use Map is updated to reflect the new category. Two areas are designated for medium to high[-]density residential land uses and **are depicted on the new Future Land Use Map** as diagonal lines overlapping the Industrial/Special Use future land use category designations. Medium to high[-]density residential land uses are most immediately planned for vacant and underutilized parcels zoned industrial in the northwest portion of the [T]ownship. As a revision to Chapter 8, this category is described as:

9

'Medium to high[-]density residential uses are appropriate land use alternatives industrially[-]planned and zoned lands when sewer and water infrastructure are available. Vacant and under-developed lands in the northwest portion of the Township zoned industrial uses are most immediately planned for medium to high-density residential uses. Public utilities, relatively immediate access to the Route 30 corridor to the north, and physically unconstrained land exist here to support more densely[-]concentrated industrial or residential development. Appropriate higher-density residential uses include single-family semi[-]detached (twins) and two-family detached (duplexes), single-family attached (townhouses), quadraplexes, and multiple-family dwellings and garden apartments, and residential developments with a mix of such uses are encouraged. A generalized density range of 4 to 8 dwelling units per acre is appropriate for this use.'

R.R. at 149a (emphasis added).

Based upon our review of the record, the Ordinance adds an entirely new and arguably incompatible use to the Township's I-Industrial District in order to allow the Township to meet its fair share housing obligations over the coming years, and to make use of underutilized industrial tracts.[9] As in *Shaw*, the added residential uses necessitated numerous changes and conditions to make the uses more compatible with an I-Industrial District and, although the amendments apply to any Township tract in the I-Industrial District, they nevertheless changed the entire nature of the I-Industrial District to what the Comprehensive Plan Addendum deemed a "new future land use category." R.R. at 149a. Accordingly, the Ordinance represents a comprehensive zoning scheme which, like in *Shaw*, is a zoning map change which required the Township to post and mail notice of the December 10, 2013 hearing in

_____

[9] For example, in the CCPC's November 19, 2013 response to the Ordinance, it recommended "that the Township require [residential development] applicant[s] to prepare a traffic impact study, especially considering [] the potential for residential car traffic mixing with commercial/industrial truck traffic." R.R. at 81a.

10

accordance with the MPC.  Therefore, the trial court erred by upholding the Board's determination that the Ordinance constituted a curative text amendment.

Based upon the foregoing, the trial court's order is reversed.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Embreeville Redevelopment, L.P., : 
                               Appellant : 
                                        : 
                 v. : 
                                          : 
The Board of Supervisors of :      No. 1381 C.D. 2015
West Bradford Township : 

## O R D E R

AND NOW, this 2nd day of March, 2016, the Chester County Common Pleas Court's June 30, 2015 order is reversed.

_____
ANNE E. COVEY, Judge