# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Circleville Road Partners, L.P.,   :
          Appellant        :
                             :
          v.                 :
                             :
Township of Ferguson         :
                             :
          v.                 :
                             :
Residential Housing Land, LLC, and  :   No. 1206 C.D. 2018
Residential Housing Development, LLC :   Argued: April 11, 2019

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE MICHAEL H. WOJCIK, Judge (P.)
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION
BY JUDGE FIZZANO CANNON         FILED: May 15, 2019

        Circleville Road Partners, L.P. (Circleville) appeals from the July 30, 2018 order of the Court of Common Pleas of Centre County (trial court) denying its procedural challenge to the validity of Ordinance No. 1034, which amended Chapter 27 Part 7 of the Ferguson Township, Pa., Zoning Ordinance (2015) (Zoning Ordinance) relating to the Traditional Town Development (TTD), a mixed use zoning district.[1] In so concluding, the trial court found that Ordinance No. 1034-

---

[1] Section 27-701B of the Zoning Ordinance provides that the establishment of the TTD Zoning District, as a mixed use district, is consistent with Section 702-A(1)(ii) of the Pennsylvania Municipalities Planning Code, which "permit[s] the creation of a traditional neighborhood development in any part of the municipality or in one or more specified zoning districts." Act of

2017 (Ordinance No. 1034) was a text amendment and rejected Circleville's assertion that Ordinance No. 1034 involved a zoning map change requiring Township of Ferguson (Township) to follow the additional notice requirements of Section 609(b) of the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. § 10609(b), pertaining to zoning map changes.[2] Upon review, we conclude that the trial court did not err as a matter of law or abuse its discretion when it held that Ordinance No. 1034 made textual amendments to the Zoning Ordinance. Accordingly, we affirm.

---

July 31, 1968, P.L. 805, *as amended*, added by the Act of June 23, 2000, P.L. 495, 53 P.S. § 10702-A(1)(ii).

[2] Section 609(b) of the MPC provides:

> (b) (1) Before voting on the enactment of an amendment, the governing body shall hold a public hearing thereon, pursuant to public notice, and pursuant to mailed notice and electronic notice to an owner of a tract or parcel of land located within a municipality or an owner of the mineral rights in a tract or parcel of land within the municipality who has made a timely request in accordance with section 109. In addition, if the proposed amendment involves a zoning map change, notice of said public hearing shall be conspicuously posted by the municipality at points deemed sufficient by the municipality along the tract to notify potentially interested citizens. The affected tract or area shall be posted at least one week prior to the date of the hearing.
>
> (2) (i) In addition to the requirement that notice be posted under clause (1), where the proposed amendment involves a zoning map change, notice of the public hearing shall be mailed by the municipality at least 30 days prior to the date of the hearing by first class mail to the addressees to which real estate tax bills are sent for all real property located within the area being rezoned, as evidenced by tax records within the possession of the municipality. The notice shall include the location, date and time of the public hearing. A good faith effort and substantial compliance shall satisfy the requirements of this subsection.

53 P.S. § 10609(b).

Residential Housing Land, LLC and Residential Housing Development, LLC (together, Developer) own an equitable interest in property located in the Township at the intersection of Blue Course Drive and Old Gatesburg Road. Reproduced Record (R.R.) at 150a. In 2010, Developer received approval to develop the property into a TTD known as Pine Hall Traditional Town Development (Pine Hall). *Id.* The Township approved Developer's plan for Pine Hall subject to certain conditions and modifications. *Id.* Circleville also owns property in the Township, which abuts the Developer's property. *Id.* at 3a. In 2011, Circleville received approval to develop its property named "Turnberry" as a TTD subject to compliance with conditions of approval and modifications granted under the Zoning Ordinance. *Id.* at 7a.

On March 16, 2017, Developer submitted an application with the Township seeking to amend the Zoning Ordinance and attached thereto a draft ordinance. R.R. at 149a. In the application, Developer explained:

> The Pine Hall TTD Master Plan provided for the development of the property over a period of 20 years, including a commercial town center, office uses, and 692 residential units. However, due to changing market conditions, only two phases of the approved Pine Hall TTD Master Plan were ever submitted and approved for development through the Specific Implementation Plan process.
>
> [Developer] is interested in resuming development of the Pine Hall TTD Master Plan. However, due to the changes in market conditions affecting the development potential of the Property, and to several inherent conflicts and contradictions within the current . . . Zoning Ordinance . . . proposed changes to the approved TTD Master Plan are necessary. The changes will facilitate the construction and development of the site as a cohesive and

3

economically sustainable [TTD].  As a prerequisite to formal revision of the Pine Hall Master Plan, the [Developer] has been working closely with the Township staff over the past 2 years to develop a "Concept Plan" that would achieve the core design objectives of the Township while still addressing the changing market conditions that necessitate revisions to the TTD Master Plan.

*Id*. at 150a.

On March 20, 2017, the Township Board of Supervisors (Board) accepted Developer's application and forwarded it to the Township Planning Commission for review and recommendation.  R.R. at 721a.  On May 8, 2017 and June 26, 2017, the Planning Commission reviewed the application and draft application with presentation and comments provided by Developer, Circleville and the public.  *Id*. at 766a-75a & 784a-90a.  On June 26, 2017, the Planning Commission recommended that the Board grant Developer's application by enacting the draft ordinance as a text amendment to the existing Zoning Ordinance.  *Id*. at 790a.  The Township provided public notice of the hearing on the application adhering to the provisions for a text amendment but admits that it did not follow the notice requirements for a zoning map change as provided in Section 609(b) of the MPC, 53 P.S. § 10609(b).  Township's Brief at 11.  After public notice, on September 5, 2017, the Board held a public hearing on the application and draft ordinance.  R.R. at 741a-42a.  The Board continued the public hearing to September 18, 2017, and on that day, the Board adopted the draft ordinance as Ordinance No. 1034.  *Id*. at 742a & 751a.

On October 13, 2017, Circleville filed a notice of appeal with the trial court, wherein it asserted that the changes made by Ordinance No. 1034 to the Zoning Ordinance have the "overall effect of comprehensively changing the nature of the zoning scheme" in the mixed use district for the "benefit of a single tract of

4

land being developed by a single developer to the detriment of [Circleville] and the Township as a whole." 10/13/17 Notice of Appeal ¶9. Circleville further asserted that the "changes to the provisions of the Zoning Ordinance governing TTDs result in a substantial and comprehensive change to the manner in which the Developer's Property is zoned in comparison to the adjacent tract of land, [Circleville's] [p]roperty, such that [Ordinance No. 1034] effectively constitutes a map change by the Township" without complying with Section 609(b) of the MPC's notice requirements, 53 P.S. § 10609(b). 10/13/17 Notice of Appeal ¶10. Circleville argued that due to the Township's failure to comply with the notice requirements applicable to a zoning map change, Ordinance No. 1034 is "void from inception." *Id*. ¶20.

Developer filed a notice of intervention, R.R. at 135a, and the Township submitted to the trial court a copy of the certified record of this matter, which included the application, the Zoning Ordinance, the meeting minutes of the Board and Planning Commission, and Ordinance No. 1034. *Id*. at 143a-46a. The trial court did not take additional evidence on the matter, and after briefing by the parties and oral argument, the trial court issued an order denying Circleville's appeal. Trial Court Opinion and Order dated 7/30/18 at 4.

In rendering its decision, the trial court reviewed three decisions of this Court, upon which the parties relied, that addressed text amendments and zoning map changes to guide its disposition of this matter: *Embreeville Redevelopment, L.P. v. Board of Supervisors of West Bradford Township*, 134 A.3d 1122 (Pa. Cmwlth. 2016); *Shaw v. Township of Upper St. Clair*, 71 A.3d 1103 (Pa. Cmwlth. 2013) and *Takacs v. Indian Lake Borough Zoning Board*, 11 A.3d 587 (Pa. Cmwlth. 2010). Trial Court Opinion and Order dated 7/30/18 at 2-3. After summarizing

5

these decisions, the trial court concluded that Ordinance No. 1034 is a text amendment because it is "most similar to the *Takacs* decision," where this Court held that the ordinance at issue was a text amendment and not a zoning map change requiring notice per Section 609(b) of the MPC, as was present with the ordinances in *Embreeville* and *Shaw*. *Id*. at 3-4.

The trial court found that the changes in Ordinance No. 1034 to the Zoning Ordinance "are not entirely new, are compatible with the current ordinance's zoning, [(unlike the ordinance in *Embreeville*)] and does not essentially create a new zoning scheme as in *Shaw*." Trial Court Opinion and Order dated 7/30/18 at 4. To support its finding, the trial court explained that Ordinance No. 1034 did not establish a "discrete area," that is, Ordinance No. 1034 did not change the zoning of any particular property or provide for special uses or regulations that apply to a limited area in relation to the surrounding properties as was present in *Shaw*. *Id*. at 3. Although the new uses at issue may make the mixed use district "more suburban or urban aesthetically," the trial court explained that "[p]ermitting additional uses in the zone or uses that change the aesthetical character of the zone" are not considered zoning map changes per *Takacs*, 11 A.3d at 593. Trial Court Opinion and Order dated 7/30/18 at 4. The trial court further noted that "many of the issues that [Circleville] has with the amendment are changes in the allowable sizes of aspects of the properties in the original ordinance and not necessarily even new uses." *Id*. Circleville brought the instant appeal.[3]

On appeal, Circleville asserts that the trial court erred as a matter of law and abused its discretion when it concluded that Ordinance No. 1034 was a text

---

[3] This Court's scope of review in a zoning case where, as here, the trial court did not take additional evidence is limited to reviewing whether the trial court committed an error of law or abused its discretion. *Shaw*, 71 A.3d at 1107 n.5.

amendment because the trial court "failed to take the changes as a whole and consider the 'overall effect of the changes'" to the Zoning Ordinance. Circleville's Brief at 24. Circleville argues that Ordinance No. 1034 made changes to the Zoning Ordinance solely for the benefit of Developer and "comprehensively rezones" Developer's property by eradicating the "zoning standards and procedures upon which [Circleville] previously relied to create its traditional neighborhood development," Turnberry, and continues to rely for development of its remaining phases. *Id*. at 15. Circleville further asserts that the changes imposed by Ordinance No. 1034 "are so dissimilar to what was previously permitted" in the mixed use district that it effectively rezoned the district "to whatever Developer requested, without following the necessary notice requirements for a zoning map change" pursuant to Section 609(b) of the MPC. *Id*.

Prior to addressing Circleville's arguments, a review of the tests and factors used by this Court to analyze the ordinances in *Embreeville*, *Shaw* and *Takacs* is warranted to aid in our evaluation of Ordinance No. 1034.

To ascertain whether an ordinance is a text amendment or map change, we are to evaluate the "overall effect of the changes" that the ordinance imposes on the existing zoning ordinance. *Embreeville*, 134 A.3d at 1127. If the ordinance adds new uses that change "*the entire nature*" of the existing zoning district such that it, in essence, creates a new land use category, then the ordinance represents a comprehensive zoning scheme, that is, a zoning map change. *Id*. at 1129.

For example, in *Embreeville*, this Court examined the language of the ordinance and evidence in the record, and held that the effect of the changes imposed by the ordinance "effectuated comprehensive change to [the township's] I-Industrial Zoning District because it effectively created a new residential zoning district within

7

that zoning district." *Embreeville*, 134 A.3d at 1125. This Court explained that the ordinance made substantial changes to the township code to allow medium and high-density residential uses (*i.e.*, garden apartments, multi-family dwellings, quadraplexes, townhomes, twins and duplexes) in the township's I-Industrial Zoning District. *Id.* at 1125 & 1127.

Specifically, the ordinance in *Embreeville* amended the township's code to "revise the purpose of the I-Industrial District" to include a "variety of higher-density housing options . . . within close proximity to nearby commercial centers[,]" increased conditional uses, and amended sections IV through X of the township's code to accommodate the new uses. *Embreeville*, 134 A.3d at 1128. The ordinance further amended the township's comprehensive plan by explaining, in part, that "a new future land use category was added called 'Medium to High-Density Residential.'" *Id.* (emphasis omitted). To accomplish these changes, the ordinance consisted of six pages, five of which imposed new area, bulk and design standards, to enable this new use to fit within the existing zoning. *Id.* at 1127. This Court concluded that these changes, taken together, added an "entirely new and arguably incompatible use" to the township's existing I-Industrial Zoning District. *Id.* at 1128. This Court further explained that the record revealed that the township enacted the ordinance to meet its prospective fair share housing obligations and to make use of underutilized industrial tracts. *Id.*

To determine the overall effect of the changes imposed by an ordinance, this Court has evaluated whether the ordinance singles out a "discrete area" or tract of land within a particular district. *Shaw*, 71 A.3d at 1109. In so doing, this Court has explained:

8

Whether an ordinance singles out a tract of land to which the ordinance is to apply is relevant to, although not dispositive of, the issue of whether the ordinance constitutes a text amendment or a map change. It is relevant to the extent that the ordinance affects the zoning of the particular tract of land in relation to other surrounding tracts of land located in the same zoning district. Specifically, *if an ordinance contains changes that are so comprehensive in nature as to result in a substantial change to the manner in which the tract of land is zoned in comparison to the surrounding tracts of land that were similarly zoned*, then that ordinance will constitute a map change.

*Id*. (emphasis added).

In *Shaw*, this Court held that the ordinance constituted a map change because the municipality, through the ordinance, created a "comprehensive zoning scheme" that applied to a specific property owned by developer, a 140,000 square-foot office building, within the existing special business district. *Shaw*, 71 A.3d at 1105 & 1109. In so concluding, this Court in *Shaw* examined the language of the ordinance and made two observations. First, this Court observed that the ordinance added a "mixed use development" as a conditional use in a district zoned as a "special business district" and the requirements did not otherwise apply to the special business district. *Id*. at 1108-09. To make this change, the ordinance added over 20 individual uses that were permitted as part of a mixed use development and added nearly 15 pages of provisions to the special business district zoning provisions of the township's zoning code.[4] *Id*. Second, this Court observed that the ordinance required, for a tract of land to be eligible for the newly added mixed use

---

[4] Though this Court in *Embreeville* subsequently explained that the number of proposed changes does not govern our determination as to whether a comprehensive zoning scheme exists, in *Shaw*, this factor was pertinent given the multitude of changes. In *Embreeville*, the record explicitly reflected that the changes made by the ordinance added a new future land use category. *Embreeville*, 134 A.3d at 1128.

9

development, that the "tract must be at least 25 contiguous acres under the same ownership at the time of conditional use approval." *Id*. at 1109. The property is the "only tract of land that meets these eligibility requirements." *Id*. Relying on these two observations, this Court explained that the ordinance "substantially changed the character of the [p]roperty's zoning in relation to other tracts of land remaining in the special purpose district that are not eligible for mixed use development." *Id*.

By comparison, this Court has held that if the ordinance adds "permitted uses" to the existing zoning ordinance, then the changes are generally not comprehensive or substantial enough to constitute a zoning map change. *Takacs*, 11 A.3d at 593. In *Takacs*, the ordinance added multi-family structures and commercial uses (that is, commercial boat docks) to the commercial-recreational (C-R) zoning district. *Id*. When evaluating this ordinance, this Court had the findings of the trial court before it comparing the C-R district to the surrounding residential R-1 district. *Id*. at 592.

The trial court in *Takacs* found that the commercial boat docking now permitted in the C-R district applied to the entire C-R district, not just one tract in the district, and the use "ma[de] sense" when comparing the two districts. *Takacs*, 11 A.3d at 593. The C-R district had, for some time, included townhouses, multi-family chalets, A-frames, condominiums, and a hotel, and differed from the R-1 district in that only in the R-1 district do "almost all of the landowners' properties abut the lake." *Id*. The owners of property in the R-1 district would not need a commercial boat docking, as their land abuts the lake, but the owners of C-R district property who use the lake for boating require such a use because they would need to rent a boat dock. *Id*. at 592 n.2. The trial court explained that the addition of multi-family structures simply restored the multi-family use to the C-R district. *Id*. at 592.

10

With these facts in mind, this Court held that adding permitted uses to the C-R district, commercial boat docking, did not cause a zoning map change. *Id*. at 593. In so holding, this Court noted that the district did not increase in size nor did it add new zoning districts as a result of the ordinance. *Id*. at 593 n.7.

With these principles in mind, we turn to the present case. Here, the trial court concluded that the new uses imposed by Ordinance No. 1034 at issue are "not entirely new and incompatible to the current previous zones' uses." Trial Court Opinion and Order dated 7/30/18 at 3. Ordinance No. 1034 provides four categories of changes: (1) it allows for dwelling units in a TTD to be used by a family or up to four unrelated persons; (2) it allows for drive-through facilities; (3) it provides that the Board may grant modifications from the design standards applicable to a TTD as provided therein; and (4) it amends certain design and dimension criteria set forth in the Zoning Ordinance. R.R. at 700a. Upon review, we conclude that these changes do not alter the nature of the TTD, a mixed use district, and therefore, the trial court did not err as a matter of law or abuse its discretion in so concluding.

First, Ordinance No. 1034 adjusted the composition of residential uses by adding the following provision to the Zoning Ordinance:

> When 100 or more such dwelling units in a [TTD] are under common management, each such dwelling unit under such common management may be used *by one family or up to four unrelated persons*, subject to the permitted occupancy of the dwelling as determined by the Centre Region Code Office in accordance with the provisions of the [Township] Housing Code.

11

R.R. at 700a (emphasis added). Although Circleville asserts that this amendment changed the definition of family,[5] Circleville's Brief at 30, this is not correct. As provided above, the language expands the use of residential units to include "one family *or* up to four unrelated persons." R.R. at 700a (emphasis added). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); *In re Thompson*, 896 A.2d 659, 669 (Pa. Cmwlth. 2006) (providing that "[t]he rules of statutory construction are applicable to statutes and ordinances alike"). Though the effect of this change may increase the density of the TTD by expanding an existing permitted residential use, a purpose of the TTD is to minimize suburban sprawl and facilitate the development of "fully integrated mixed use" neighborhoods in areas of the Township where appropriate. Zoning Ordinance § 27-701(1)(A).[6] Expanding

_____

[5] We note that the heading to Ordinance No. 1034 provides "to allow for dwelling units in a traditional town development (TTD) *to be used by a family of up to four unrelated persons* when 100 or more dwelling units are under common management." R.R. at 700a (emphasis added). But, we are guided by the language provided in the ordinance itself rather than the heading to ascertain its meaning. 1 Pa.C.S. § 1924 (providing that "[t]he headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute *shall not be considered to control* but may be used to aid in the construction thereof") (emphasis added); *Commonwealth v. Magwood*, 469 A.2d 115, 119 (Pa. 1983) (explaining that the title cannot control the plain words of a statute).

[6] The intent of the TTD District is to, in part:

> sanction, promote, and facilitate the development of fully integrated, mixed use, pedestrian-oriented neighborhoods in areas of the Township that are most appropriate for this type or style of the development. The basis for such design influence is the desire to minimize traffic congestion, suburban sprawl, and environmental degradation. These regulations, administered jointly with the associated Design Manual found in Appendix 27-A, are designed to diversify and integrate land uses within close proximity to each other and to provide for the daily recreational and shopping needs of residents and those who work within the Township.

Zoning Ordinance § 27-701(1)(A).

the residential use to allow more persons to reside in a dwelling, as defined therein, within the TTD minimizes sprawl and furthers a goal of integrating mixed uses. *See Takacs*, 11 A.3d at 592 (explaining that changes imposed by ordinance "make[] sense").

Second, Ordinance No. 1034 permits drive-through services for a "maximum of two commercial uses" and removes the existing prohibition of "drive-through or drive-in establishments" in a TTD. R.R. at 351a & 705a. Although this change added a new use to the mixed use district, it did not "change the entire nature" of the district to create a new land use category. *See Embreeville*, 134 A.3d at 1129. Ordinance No. 1034 provided the following conditions to the new use: it cannot directly access a road on the periphery of the development; it cannot be located on adjacent lots; the layout "must be approved by Township staff, and may be required to deviate from standard franchise footprints"; and "[a]ll layout and design shall consider and shall not compromise pedestrian convenience, safety, or detract from the overall walkability of the [TTD]." R.R. at 705a. Adding drive-through services as a permitted use with the aforementioned conditions is not inconsistent with the overall intent of a TTD, which is, in part, to "diversify and integrate land uses within close proximity to each other." Zoning Ordinance § 27-701(1)(A).

Third, Ordinance No. 1034 adds provisions to the Zoning Ordinance defining the standards used by the Board to grant modifications from the design elements of a TTD. Ordinance No. 1034 provides:

> The Board of Supervisors *may allow* for modification of the design standards applicable to a [TTD] provided for in this Section 27-701, including, *but not limited to compactness, pedestrian orientation, street geometry or other related design features, in accordance with the standards* applicable to the grant of modifications under

13

Chapter 22, Subdivision and Land Development, § 22-105.

R.R. at 701a (emphasis added). Section 22-105 provides for modifications, in part, as follows:

An applicant may request the Board of Supervisors to grant a modification of the requirements of one or more provisions of this Chapter *if the literal enforcement will exact undue hardship because of peculiar conditions to the land in question; provided, that such modification will not be contrary to the public interest and that the purpose of the intent of this Chapter is observed. . . .*

Township of Ferguson Subdivision and Land Development Regulations, Pa. (2003) § 22-105; R.R. at 604a (emphasis added). Though Circleville contends that Ordinance No. 1034 altered the Board's authority to grant modifications and "strips the Township of its discretion," Circleville's Brief at 27, this is not entirely accurate as Ordinance No. 1034 expressly provides that the Board "may allow for modification of the design standards and criteria applicable to a [TTD]" in accordance with the standards provided therein. R.R. at 701a. The standards provided therein are consistent with the standards in the MPC.

Specifically, Section 708.1-A of the MPC provides that the municipality may enact ordinance provisions applying to a traditional neighborhood development to address the design standards appropriate for this type of development. Added by Section 3 of the Act of November 23, 2010, P.L. 1101, 53 P.S. § 10708.1-A. These standards may include, but are not limited to, "*compactness, pedestrian orientation, street geometry or other related design features*" subject to modification similar to Section 512.1. *Id.* (emphasis added). Section 512.1 provides that the governing body may "grant a modification of the requirements of one or more provisions if the literal enforcement will exact undue

14

hardship because of peculiar conditions pertaining to the land in question." Added by Section 40 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10512.1(a). The modification, however, cannot "be contrary to the public interest" and must ensure "that the purpose and intent of the ordinance is observed." *Id.* Altering the Board's authority to grant modifications to comport with the MPC does not support Circleville's assertion of a map change because it does not change the nature of the mixed use district.[7]

Finally, Ordinance No. 1034 amends six sections of the Zoning Ordinance to adjust certain design and dimensional requirements of a TTD. Specifically, Section 4 removed the prohibition that townhouses cannot be accessed from the front and allows townhouses to have, in some instances, front entry garages, but limits front entry garages to "no more than 50%" of the overall number. R.R. at 341a-42a & 701a. Section 5 removes the prohibition that utilities cannot be located in the Township right-of-way and requires both main and service lines to "be provided underground either within private easements or located within an alley or public street right-of-way." *Id.* at 346a & 701a. Section 5 requires 35% of commercial structures to have two or more stories with upper stories occupied by residential or office uses and increases commercial building height (from five stories to eight stories). *Id.* at 352a & 701a. Section 6 decreases the minimum "permitted" percentage of total acreage for residential single-family detached dwellings (15% to 5%) and increases the maximum permitted percentage for multi-family residences (30% to 50%). *Id.* at 353a & 702a.

---

[7] Although the Board may grant fewer modifications for design standards in a TTD, given the changes to the design and dimension requirements made by Ordinance No. 1034, these modifications do not result in a new comprehensive zoning scheme, as they do not change the nature of the mixed use district.

15

Section 8 adjusts several requirements provided in the Zoning Ordinance. Section 8 alters the minimum standard range for the block depth/width of houses, back to back, from 200-400 feet to 150-400 feet. *Id.* at 354a & 702a. Section 8 adjusts the required mixture of townhouses[8] by allowing them to be "dispersed" among a variety of other residential and/or non-residential uses or to be segregated in clusters of single residential-type buildings. *Id.* at 355a & 702a. Additionally, Section 8 increases the maximum number of townhouse structures that "may be located adjacent to each other when established on individual lots" from four to six. *Id.* Section 8 adjusts lot sizes, width and depth for certain single-family residences, multi-family, and commercial uses and adjusts unit sizes for residential and non-residential units.[9] *Id.* at 357a-58a & 703a. Section 8 further: lowers the garage setback from 40 feet to 10 feet; reduces certain rear yard and structure setbacks to zero; and allows grocery stores, pharmacies and hotels to be excepted from the requirement that 50% of the front façade on the ground floor must be transparent. *Id.* at 359a-60a & 704a. Section 8 increases the maximum impervious coverage and building footprint from 50% to 85% and the maximum building footprint on each lot to 85% regardless of use. *Id.* at 358a & 704a. Section 9 increases off-street parking compounds for residential or non-residential uses (from 60% to 90%), allows no more than 90% of parking to occur on off-street parking compounds, and requires interior parking lot landscaping to have a raised bed for

---

[8] The Zoning Ordinance originally required the townhouses to be dispersed among other residential and/or non-residential uses. R.R. at 355a.

[9] Section 8 adjusted the existing charts provided in the Zoning Ordinance to decrease minimum lot sizes for single-family detached, single-family semi-detached, multi-family and commercial uses. R.R. at 357a & 703a. Section 8 decreased the minimum width of single-family detached homes and increased the maximum width of commercial lots. *Id.* Finally, Section 8 decreased the depth of all single-family homes. *Id.*

every 10 spaces on average. *Id*. at 361a-63a & 704a-05a. Finally, Section 12 allows storm water facilities in areas designed for open or public spaces. *Id*. at 334a & 706a.

Ordinance No. 1034, including the amendments to Sections 4, 5, 6, 8, 9 and 12, did not change the boundaries or size of a TTD; rather, it made adjustments to the existing design and dimension standards applicable to a TTD in a mixed use district. Though the changes were proposed to the Township by Developer, the changes apply to any property owner implementing a TTD in a mixed use district. Ordinance No. 1034 amended several sections of the Zoning Ordinance but, upon review of the sections, the changes adjusted existing provisions of the Zoning Ordinance. Taken as a whole, Ordinance No. 1034 did not substantially change the nature of the district as a mixed use district. Therefore, the trial court did not err as a matter of law or abuse its discretion when it concluded that the changes presented by Ordinance No. 1034 are not entirely new, are compatible with the current zoning ordinance, and do not create a new zoning scheme.

Circleville nevertheless argues that the effect of these changes, taken as a whole, increases the overall density of the development and results in the introduction of urban characteristics of the TTD, which is incompatible with and in conflict with the purposes and goals of a TTD as provided by the MPC. Circleville's Brief at 30-40. Circleville contends that the trial court did not properly focus on the "magnitude of the changes, including the sweeping dimensional changes" imposed by Ordinance No. 1034 and that the MPC indicates that scale matters. Circleville's Reply Brief at 9.

However, as noted by the trial court, most of the changes imposed by Ordinance No. 1034 relate to the size of existing permitted uses. The test is whether

17

the overall effect of the changes imposed by the ordinance alters the nature of the district such that it represents a comprehensive zoning scheme. *Embreeville*, 134 A.3d at 1129. Ordinance No. 1034 does not alter the TTD as a mixed use district; it was a mixed use district before Ordinance No. 1034 and it remains so after the enactment. *Cf. Embreeville*, 134 A.3d at 1128-29 (concluding that the ordinance added an entirely new and arguably incompatible use by adding a new future land use called "medium to high density residential" to the township's industrial district thereby changing the entire nature of the industrial district). Though the changes may increase urbanization, the purpose of a TTD is to "encourage innovation and promote flexibility" in design[10] and to "diversify and integrate land uses within close proximity to each other." Zoning Ordinance § 27-701(1)(A)-(B).

Circleville, nevertheless, contests the trial court's finding that no discrete area is drawn out because Ordinance No. 1034 was "for the benefit of a single tract of land being developed by a single developer." Circleville's Brief at 9

---

[10] Section 27-701(1)(B) of the Zoning Ordinance provides:

> It is the intent of these standards, in conjunction with the Design Manual . . . to encourage innovation and promote flexibility, economy, and ingenuity in development and to be consistent with the goals and objectives enumerated by the provisions of Article VII-A of the Municipalities Planning Code (MPC) [Added by Section 21 of the Act of June 23, 2000, P.L. 68, 53 P.S. §§ 10701-A-10709-A]. All such development within the Township is intended to be designed as an outgrowth or extension of existing development or urban infill. As a result, the establishment of the TTD Zoning District is consistent with the provisions of § 702-A(1)(ii) of the MPC. The application of flexible design standards and increases in the permissible density of development[,] which are specified below, are dependent on the extent to which each proposal [i]dentifies the ability to successfully achieve the goals enumerated herein.

Zoning Ordinance § 27-701(1)(B).

18

& Reply Brief at 1-2.  But the changes imposed by Ordinance No. 1034 apply to any TTD in the mixed use district, including property owned by Circleville.  The changes imposed by Ordinance No. 1034 are not so comprehensive as to result in a substantial change to Developer's property as compared to others similarly situated in the mixed use district, because the changes provide standards applicable to all TTDs in the mixed use district.  *See Shaw*, 71 A.3d at 1109.

In summary, we conclude that the trial court did not err as a matter of law or abuse its discretion when it concluded that Ordinance No. 1034 made textual amendments to the Zoning Ordinance.  *See Takacs*, 11 A.3d at 593.  The amendments imposed on the Zoning Ordinance by Ordinance No. 1034 did not change the nature of the TTD as a mixed use district nor did they create a new land use category.  *See Embreeville*, 134 A.3d at 1129.  Moreover, the amendments imposed by Ordinance No. 1034 apply to Developer's property, Circleville's property and any other property within a TTD in a mixed use district and, therefore, do not make a substantial change to the manner in which one tract of land is zoned as compared to other properties similarly zoned.  *See Shaw*, 71 A.3d at 1109.  Because Ordinance No. 1034 made textual amendments to the Zoning Ordinance, the notice requirements of Section 609(b) of the MPC pertaining to zoning map changes do not apply.

Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Circleville Road Partners, L.P.,     :
             Appellant     :
     :
     v.     :
     :
Township of Ferguson     :
     :
     v.     :
     :
Residential Housing Land, LLC, and     :     No. 1206 C.D. 2018
Residential Housing Development, LLC :

## O R D E R

AND NOW, this 15th day of May, 2019, the July 30, 2018 order of the Court of Common Pleas of Centre County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge